IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOCAL UNION NO. 98 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, ET AL. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| RGB SERVICES, LLC, ET AL. | : | NO. 10-3486 |

**MEMORANDUM**

**Padova, J.**                                                                                              **January 28, 2011**

      Plaintiffs in this action brought pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA") are Local Union No. 98, International Brotherhood of Electrical Workers ("Local 98"), and the trustees of the following employee benefit funds:  Local 98 Health & Welfare Fund ("Health Fund"), Local 98 Pension Fund ("Pension Fund"), Local 98 Vacation Trust Fund ("Vacation Fund"), Local 98 Apprenticeship Training Fund ("Training Fund"), Local 98 Deferred Income Fund ("Deferred Income Fund"), Local 98 Local Labor-Management Cooperation Committee Fund ("Cooperation Fund"), and National Electrical Benefit Fund ("National Fund") (collectively, "the Funds").  Defendants are RGB Services, LLC ("RGB"), a limited liability company engaged in the business of providing electrical services to the public, and Michael and Rhea Metsikas ("the Metsikases"), who are husband and wife and alleged to be principals, agents, employees, and servants of RGB.  Plaintiffs have sued Defendants for failure to timely remit contributions and deductions due and owing to the Funds pursuant to a multiple-employer collective bargaining agreement between Local 98 and the Philadelphia division of the Penn-Del-Jersey Chapter of the National Electrical Contractors Association (the "Commercial Agreement"), and for failure to furnish monthly reports as required by the Commercial Agreement.

Plaintiffs seek to hold the Metsikases personally liable for RGB's unpaid contributions to the Funds. Presently before the Court is the Metsikases' Motion to Dismiss. For the reasons that follow, the Motion is granted in part and denied in part.

## I.   BACKGROUND

The Complaint alleges the following facts. At all relevant times, RGB was a party to the Commercial Agreement. (Compl. ¶ 12.) The Commercial Agreement requires RGB to make monthly contributions to the Health Fund, the Pension Fund, the Training Fund,[1] the Deferred Income Fund, the Cooperation Fund and the National Fund, consistent with the Commercial Agreement and trust agreements referenced therein. (Id. ¶¶ 14-18.) The Commercial Agreement also requires RGB to remit monthly wage deductions from its employees to the Vacation Fund consistent with the Commercial Agreement and trust agreements referenced therein. (Id. ¶¶ 19, 21.) The Commercial Agreement further requires RGB to deduct dues from the pay of each employed Local 98 member consistent with the amount specified in the Local 98 bylaws and to remit the same to Local 98. (Id. ¶ 20.) The Commercial Agreement also requires RGB to furnish monthly reports to Local 98, listing the names of each Local 98 member employed, the number of hours each worked, and each employee's gross earnings. (Id. ¶ 13.)

The Complaint alleges that, "[d]espite repeated demands by Plaintiffs, RGB has failed to

---

[1] The Complaint alleges that unpaid contributions to the Training Fund were unremitted employee wage deductions. (Compl. ¶ 19.) However, the Commercial Agreement, which the Complaint attaches, states unequivocally that payments to the Training Fund are employer contributions. (Commercial Agreement § 3.06.) Accordingly, we set aside the allegation. See 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1363, at 120-21 (3d ed. 2004) ("The district court will not accept as true pleading allegations that are contradicted by . . . exhibits attached to or incorporated in the pleading.") (footnotes omitted).

timely remit contributions and deductions due and owing and has failed to furnish required monthly reports." (Id. ¶ 26.)  RGB has failed to pay the Funds contributions and remittances totaling an estimated $512,806.21.² (Id. ¶ 31.)  In addition, RGB is liable for penalties in the amount of $50,498.06 and interest in the amount of $208,509.66 pursuant to the Commercial Agreement and additional penalties and interest that will have to be determined at trial. (Id. ¶¶ 32, 33.)

The Complaint alleges that the Metsikases functioned as directors of RGB. (Id. ¶¶ 36, 48.) The Metsikases siphoned funds of RGB to further their personal agendas and ignored their duties and responsibilities as principal officers of RGB. (Id. ¶¶ 38, 50.) The Metsikases commingled the assets of RGB with their own funds and used company funds to satisfy their personal expenses. (Id. ¶¶ 40, 52.) RGB was a facade for the operations of the Metsikases, and the alter ego of the Metsikases. (Id. ¶¶ 41-42, 52-53.) RGB was under-capitalized and failed to observe corporate formalities. (Id. ¶¶ 37, 39, 49, 51.)

The Metsikases, as acting principals of RGB, were responsible for and ratified administrative decisions exercised on behalf of RGB, and were vested with the authority to exercise discretionary control over the management of the finances and business affairs of RGB. (Id. ¶¶ 60, 73.) Their discretionary control over the management of the financial responsibilities and business affairs of RGB included, but was not limited to, authorizing and tendering the payment of contributions and withholdings due to the Funds pursuant to the Commercial Agreement and the trust agreements. (Id. ¶¶ 61, 74.)

The Complaint asserts five causes of action pursuant to ERISA.  Count I asserts a claim

---

²In their Memorandum in response to Defendants' Motion, Plaintiffs state that the outstanding amount of contributions and deductions is now $721,315.00. (Pls.' Mem. at 2.)

against RGB for delinquent contributions, penalties, and interest pursuant to 29 U.S.C. § 1145. Counts II and IV assert claims against Michael Metsikas for RGB's unpaid contributions, penalties, and interest pursuant to 29 U.S.C. § 1145 (Count II) and 29 U.S.C. § 1109 (Count IV). Counts III and V assert claims against Rhea Metsikas for RGB's unpaid contributions, penalties, and interest pursuant to 29 U.S.C. § 1145 (Count III) and 29 U.S.C. § 1109 (Count V). The Metsikases have moved to dismiss Counts II, III, IV, and V pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that the Complaint fails to state a claim against either of them upon which relief may be granted.

## II.   LEGAL STANDARD

When considering a motion to dismiss pursuant to the Federal Rules of Civil Procedure 12(b)(6), we look primarily at the facts alleged in the complaint and its attachments. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010). We take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). Legal conclusions, however, receive no deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (quotation omitted). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "The

plausibility standard is not akin to a 'probability requirement.' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). In the end, we will dismiss a complaint if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 1235-36 (3d ed. 2004)).

### III.   DISCUSSION

Plaintiffs bring this suit pursuant to ERISA, which imposes liability on any "employer" that fails to make contributions to an employee benefit fund as required by a collective bargaining agreement. See 29 U.S.C. § 1145. ERISA defines an "employer" as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; [including] a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5). The Metsikases argue that they are not liable to the Funds for contributions that RGB failed to make because RGB was the "employer," as defined by ERISA. Plaintiffs do not dispute that RGB was the "employer." Rather, Plaintiffs claim that the Metsikases are liable for RGB's failure to make required contributions to the Funds because they are officers of RGB and the facts in this case justify piercing the corporate veil, and because the Metsikases are fiduciaries, as that term is defined by ERISA, with personal liability for any contributions that RGB failed to make. The Metsikases argue that the claims against them must be dismissed because they have no personal liability for RGB's unpaid contributions under either theory.

####   A.   Piercing the Corporate Veil

It is well-settled that "an individual cannot be held liable for corporate ERISA obligations solely by virtue of his [or her] role as officer, shareholder, or manager." Romero v. Allstate Ins. Co., Civ. A. No. 01-3894, 2010 WL 4670172, at *8 (E.D. Pa. Nov. 10, 2010) (alteration in original)

5

(quotation omitted); see also Solomon v. Klein, 770 F.2d 352, 354 (3d Cir. 1985) ("'There is no indication that Congress intended to expose corporate officers to liability for their employers' violations of ERISA . . . .'" (quoting Combs v. Indyk, 554 F. Supp. 573, 575 (W.D. Pa. 1982)). "In certain situations, however, the corporate veil can be pierced, as a tool of equity, to disregard the existence of a corporation and impose liability on the corporation's individual principals and their personal assets." Blair v. Infineon Techs. AG, 720 F. Supp. 2d 462, 469 (D. Del. 2010) (citing Bd. of Tr. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 171 (3d Cir. 2002), and Publicker Indus., Inc. v. Roman Ceramics Corp., 603 F.2d 1065, 1069 (3d Cir. 1979)). Thus, an ERISA plaintiff can hold an individual corporate officer personally liable for a corporation's ERISA violation if grounds exist for piercing the corporate veil. Local Union No. 98, Int'l Bhd. of Elec. Workers v. Garney Morris, Inc. ("Garney Morris"), Civ. A. No. 03-5272, 2004 WL 1151722, at *1 (E.D. Pa. May 24, 2004); see also Central Pa. Teamsters Pension Fund v. McCormick Dray Line, Inc., 85 F.3d 1093, 1109 (3d Cir. 1996) ("This court has held that there is no indication that Congress intended to hold corporate officers liable for a corporation's failure to contribute to benefit funds when there is no basis for piercing the corporate veil." (citing Solomon, 770 F.2d at 353)).

"As a general rule, the corporate entity should be upheld unless specific, unusual circumstances call for an exception." United Food & Commercial Workers Union v. Fleming Foods East, Inc., 105 F. Supp. 2d 379, 388 (D.N.J. 2000) (citing Zubik v. Zubik, 384 F.2d 267, 272 (3d Cir. 1967)). "A court should disregard the corporate existence only when it appears that 'a corporation was an artifice and a sham to execute illegitimate purposes and [an] abuse of the corporate fiction and immunity that it carries.'" Id. (quoting Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1520-22 (3d Cir. 1994) (alteration in original) (quotation omitted)). The United States Court of Appeals for the Third Circuit directs district courts to consider the following factors when

determining whether grounds exist for piercing the corporate veil:

> the failure to observe corporate formalities; non-payment of dividends; the insolvency of the debtor corporation at the time; siphoning of funds of the corporation from the dominant stockholder; nonfunctioning of other officers or directors; absence of corporate records; and the fact that the corporation is merely a facade for the operation of the dominant stockholder or stockholders.

Solomon, 770 F.2d at 353-54 (citing United States v. Pisani, 646 F.2d 83, 88 (3d Cir. 1981), and DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co., 540 F.2d 681 (4th Cir. 1976)). "In addition, courts sometimes consider undercapitalization." Kaplan, 19 F.3d at 1521 (citing Pisani, 646 F.2d at 88).

When we examine whether the Complaint alleges sufficient facts to state a plausible claim that RGB's corporate veil should be pierced, we "'disregard any legal conclusions,'" as well as "'naked assertions devoid of further factual enhancement.'" Santiago v. Warminster Twp., --- F.3d ---, No. 10-1294, 2010 WL 5071779, at *5 (3d Cir. Dec. 14, 2010) (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009), and Iqbal, 129 S. Ct. at 1949). Here, the Complaint alleges no specific facts to support the legal conclusions that RGB failed to observe corporate formalities, that the Metsikases siphoned corporate funds, or that the Metsikases commingled funds. As the Metsikases point out, Plaintiffs have not identified what corporate formalities were not observed, what funds were siphoned, what assets of RGB were commingled, or when and how any of this alleged conduct occurred. Similarly, Plaintiffs have offered no factual support for their legal conclusions that RGB was merely a facade and that RGB was the alter ego of the Metsikases. We conclude that the Complaint does not allege sufficient facts to justify piercing the corporate veil and holding the Metsikases personally liable for RGB's failure to make required contributions and remittances pursuant to 29 U.S.C. § 1145. See Essex Ins. Co. v. Miles, Civ. A. No. 10-3598, 2010

WL 5069871, at *3 (E.D. Pa. Dec. 3, 2010). Accordingly, we grant the Metsikases' Motion to Dismiss as to Counts II and III.

    B.    <u>Fiduciary Liability</u>

ERISA provides for personal liability on the part of plan fiduciaries as follows:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this [Act] shall be personally liable to make good to such plan any losses to the plan resulting from each such breach.

29 U.S.C. § 1109(a). "ERISA defines a fiduciary as a person who 'exercises any discretionary authority or discretionary control respecting management of such plan or any authority or control respecting the management or disposition of assets.'" <u>Teamsters Health & Welfare Fund v. World Transp., Inc.</u> ("<u>Teamsters</u>"), 241 F. Supp. 2d 499, 505 (E.D. Pa. 2003) (quoting 29 U.S.C. § 1002(21)(A)(i)). Thus, an individual may be held liable as a fiduciary pursuant to ERISA if (1) the unpaid contributions were "plan assets," and (2) the individual "exercis[ed] authority or control over the management or disposition of [such] assets." <u>In re Mushroom Transp. Co., Inc.</u>, 382 F.3d 325, 346 (3d Cir. 2004) (citing <u>Bd. of Trs. of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assoc., Inc.</u> ("<u>Bricklayers</u>"), 237 F.3d 270, 274 (3d Cir. 2001)). "Both elements must be proven in turn; if the unpaid contributions are determined not to be plan assets, no liability can attach to the individual defendants." <u>Roofers Local 30 Combined Welfare Fund v. Lentz McGrane, Inc.</u>, Civ. A. No. 03-4187, 2005 WL 425582, at *3 (E.D. Pa. Feb. 21, 2005).

    1.    <u>Plan Assets</u>

The Complaint alleges that RGB's unpaid contributions to the Funds were "plan assets" pursuant to 29 C.F.R. § 2510.3-102(a)(1), which provides in pertinent part as follows:

> [T]he assets of the plan include amounts (other than union dues) that

> a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution or repayment of a participant loan to the plan, as of the earliest date on which such contributions or repayments can reasonably be segregated from the employer's general assets.

29 C.F.R. § 2510.3-102(a)(1). This regulation "'specifies when *employee* contributions become assets'" but does not "'govern[] when *employer* contributions become plan assets.'" Finkel v. Romanowicz, 577 F.3d 79, 85 n.8 (2d Cir. 2009) (quoting In re Halpin, 566 F.3d 286, 289 (2d Cir. 2009)). We have identified no statute, regulation or case law that specifies when unpaid employer contributions become plan assets. See Bottle Beer Drivers, Warehouseman & Helpers Teamsters Local 843 v. Anheuser Busch Inc., 96 F. App'x 831, 834 (3d Cir. 2004). Consequently, we "must look to the language of the contract or trust agreement to determine whether unpaid [employer] contributions are 'plan assets' under the statute." Carpenters Combined Funds ex rel. Klein v. Klingman ("Klingman"), Civ. A. No. 10-63, 2010 WL 3432837, at *3 (W.D. Pa. Aug. 25, 2010) (citations omitted); see also Garney Morris, 2004 WL 1151722, at *4 ("To determine if the unpaid [employer] contributions were plan assets, we examine the agreement that created the benefit plan." (citing Teamsters, 241 F. Supp. 2d at 505)).

      a.      The Vacation Fund

The Commercial Agreement provides that the Vacation Fund shall be funded with employee wage deductions. In pertinent part, the Commercial Agreement provides as follows:

> Each Employer shall withhold from the net wages due each of its employees . . . a sum equal to 5.41% of said employees [sic] gross wages. Such deduction shall be contributed by the Employer as set forth below.

(Commercial Agreement § 3.08.) Because the unpaid contributions to the Vacation Fund are

unremitted employee wage deductions, they became plan assets "as of the earliest date on which such contributions . . . can reasonably be segregated from [RGB's] general assets." 29 C.F.R. § 2510.3-102(a)(1); see also Trs. of Nat'l Elevator Indus. Pension v. Lutyk ("Lutyk II"), 140 F. Supp. 2d 447, 456 (E.D. Pa. 2001). We conclude that the Complaint, together with its attachments, sufficiently alleges that the unremitted wage deductions owed to the Vacation Fund were plan assets.

b. The National Fund

The trust agreement for the National Fund (the "National Trust Agreement") provides that the National Fund shall be funded with employer contributions. (Nat'l Trust Agreement §§ 6.61, 6.8, 6.9.) Consequently, 29 C.F.R. § 2510.3-102(a)(1) is inapplicable and we must examine the National Trust Agreement to determine whether the Complaint, together with its attachments, sufficiently alleges that the unpaid employer contributions were plan assets. See Bottle Beer Drivers, 96 F. App'x at 835.

There is some support for the proposition that the "[p]lan asset determination generally turns on whether the contract or trust agreement explicitly states that unpaid contributions become 'plan assets' as soon as they are due and owing" and "[i]f a trust agreement does not explicitly designate unpaid contributions as 'plan assets,' courts are reluctant to so designate them." See Roofers, 2005 WL 425582, at *3 (citation omitted); see also Carpenters Combined Funds ex rel. Klein v. Klingman ("Klingman II"), Civ. A. No. 10-63, 2010 WL 3432837, at *3 (W.D. Pa. Aug. 25, 2010) ("[A] [p]laintiff has adequately pled that the unpaid funds constitute 'plan assets'" where the governing agreement "specifies that employer contributions become 'vested' and become 'plan assets' immediately when due."); Teamsters, 241 F. Supp. 2d at 506 ("[W]ithout clear and undisputed language to the contrary, we consider past due contributions not to be booked as plan assets until the

delinquent amounts were determined by an audit or contribution report." (quotation marks and citations omitted)); Galgay v. Gangloff, 677 F. Supp. 295, 301 (M.D. Pa. 1987) (denying a motion to dismiss and stating that "[t]he key to the court's ruling in this situation is the clear and undisputed language of the Anthracite Wage Agreement, to which all defendants are allegedly parties either directly or indirectly, stating that title to all monies 'due and owing' the plaintiff fund is 'vested' in the fund"). Here, the National Trust Agreement does not explicitly designate unpaid contributions as plan assets, nor does it contain clear and undisputed language that title to all monies due and owing is vested in the fund. However, there is also some support for the proposition that "unambiguous language that gives rise to contractual obligations for payment of money due" can "support[] the conclusion that unpaid contributions are 'plan assets' under ERISA." Roofers, 2005 WL 425582, at *4. Language that defines the plan to include payments owed but not made also may "support the inclusion of unpaid contributions" as plan assets. Trs. of Nat'l Elevator Indus. Pension v. Lutyk ("Lutyk I"), 140 F. Supp. 2d 407, 411 (E.D. Pa. 2001). Here, the National Trust Agreement does state that employer contributions "shall constitute a legally binding, absolute obligation to the [National Fund]," and that the National Fund includes "all funds received in the form of contributions, together with all contracts (including dividends, interest, refunds, and other sums payable to the Trustees on account of such contracts)." (Nat'l Trust Agreement §§ 6.61, 1.16.)

At this stage of the litigation, we need not determine whether unpaid contributions to the National Fund were in fact plan assets. Ultimately, "the principle for determining whether unpaid employer contributions become plan assets is the intent of the parties as expressed in their agreement, which cannot be resolved" on a motion to dismiss. Service Employees Intern. Union, Dist. 1199P v. Monsour Med. Ctr., Inc., 555 F. Supp. 2d 566, 569-70 (W.D. Pa. 2008) (citation

omitted). We conclude, at this stage of the litigation, that the Complaint, together with its attachments, sufficiently alleges that RGB's unpaid contributions to the National Fund were plan assets.

### c. The other employee benefit funds

The Commercial Agreement provides that the Health Fund, the Pension Fund, the Training Fund, the Deferred Income Fund and the Cooperation Fund (collectively, the "other employee benefit funds") shall be funded with employer contributions. (Commercial Agreement §§ 3.02(c), 3.03, 3.04(a), 3.05(a), 3.06(a), and App. A.) Consequently, 29 C.F.R. § 2510.3-102(a)(1) is inapplicable and we look to the governing agreements to determine whether the unpaid employer contributions were plan assets. See Bottle Beer Drivers, 96 F. App'x at 835.

The Complaint attaches only copies of the Commercial Agreement and the National Trust Agreement, neither of which addresses when unpaid employer contributions to the other employee benefit funds become plan assets. Plaintiffs have not submitted copies of the trust agreements creating any of the other employee benefit funds, although they do purport to quote from those agreements in their memorandum. (Pls.' Mem. at 7-8.) Assuming, arguendo, that the agreements governing the other employee benefit funds include the language quoted by Plaintiffs in their memorandum, that language does not address when employer contributions become assets of those funds, and, consequently, the quoted language does not establish that RGB's unpaid contributions to those funds were plan assets for purposes of fiduciary liability under ERISA. See Lutyk I, 140 F. Supp. 2d at 411-12. We conclude that Plaintiffs have not sufficiently alleged that the unpaid contributions to the multi-employer benefit funds were assets of the funds.

Because we conclude that Plaintiffs have not sufficiently alleged that unpaid contributions

to the other employee benefit funds were plan assets, we need not determine whether the Metsikases exercised authority or control over those unpaid contributions. See Roofers, 2005 WL 425582, at *3. Therefore, we grant the Metsikases' Motion to Dismiss Counts IV and V with respect to the other employee benefit funds. However, because we conclude that the Complaint, together with its attachments, sufficiently alleges that unremitted employee wage deductions owed to the Vacation Fund and unpaid contributions owed to the National Fund were plan assets, we proceed to consider whether the Complaint sufficiently alleges that the Metsikases exercised authority or control over such assets.

### 2.   Authority or Control

Pursuant to ERISA, an individual is a fiduciary with respect to an employee benefit plan if "he exercises . . . any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i). "[O]ne need not have discretion in exercising authority or control over the management or disposition of plan assets in order to qualify as a fiduciary under § 1002(21)(A)(I)." Mushroom Transp., 382 F.3d at 346 (citing Bricklayers, 237 F.3d at 274). However, "the fiduciary status of a corporation is not automatically conferred upon the officers of the corporation merely by virtue of their office." Nelson v. Jones & Brown, Inc., Civ. A. No. 01-481, 2002 WL 31081363, at *3 (W.D. Pa. June 3, 2002) (citing Confer v. Custom Eng'g Co., 952 F.2d 34, 37 (3d Cir. 1991)). Rather, fiduciary liability attaches to an individual corporate officer only "'to the extent' that [the particular] person functions in a fiduciary capacity." Srein v. Frankford Trust Co., 323 F.3d 214, 220 (3d Cir. 2003) (quoting 29 U.S.C. § 1002(21)(A), and citing Glaziers & Glassworkers Union Local No. 252 v. Newbridge Secs., Inc., 93 F.3d 1171, 1180 (3d Cir. 1996)); see also Bricklayers, 237 F.3d at 273 (reaffirming that "corporate officers acting on behalf of a corporation are not themselves

fiduciaries unless they have individual . . . roles in plan administration" (citing Confer v. Custom Eng'g Co., 952 F.2d 34, 37 (3d Cir. 1991)).

To determine whether the Complaint sufficiently alleges that the Metsikases individually exercised authority or control over the unremitted deductions owed to the Vacation Fund and the unpaid contributions owed to the National Fund, we may consider the "factual allegations" of the Complaint. Miller v. Mellon Long Term Disability Plan, 721 F. Supp. 2d 415, 429 (W.D. Pa. 2010). The Complaint alleges that the Metsikases were acting principals of RGB, were responsible for and ratified administrative decisions exercised on behalf of RGB, were vested with the authority to exercise discretionary control over the management of the financial responsibilities and business affairs of RGB, and exercised discretionary control over the management of the financial responsibilities and business affairs of RGB including, but not limited to, authorizing and tendering the payment of contributions and withholdings due to the funds pursuant to the agreements. (Id. ¶¶ 9, 10, 60, 61, 73, 74.) We conclude that the Complaint sufficiently alleges that that the Metsikases exercised authority or control over the unremitted wage deductions owed to the Vacation Fund and the unpaid contributions owed to the National Fund. See Carpenters Combined Funds ex rel. Klein v. Klingman ("Klingman I"), Civ. A. No. 10-63, 2010 WL 1007830, at *2 (Mar. 15, 2010) ("The complaint alleges that, as the owner and principal officer of R.K. Millwork, Klingman falls within th[e] definition [of an ERISA fiduciary]. At this stage of the case, that allegation must be taken as true. Klingman will have an opportunity to renew his contentions, if warranted, at the summary judgment stage . . . ."). Therefore, we deny the Metsikases' Motion to Dismiss Counts IV and V with respect to the Vacation Fund and the National Fund.

**IV.     CONCLUSION**

For the reasons set forth above, we conclude that Plaintiffs have not stated a plausible claim that grounds exist for piercing the corporate veil.  Therefore, we grant the Metsikases' Motion to Dismiss Counts II and III.  We also conclude that the Complaint does not sufficiently allege that unpaid contributions to the Cooperation Fund, the Health Fund, the Pension Fund, the Deferred Income Fund, and the Training Fund were plan assets.  Accordingly, we conclude that Plaintiffs have not stated plausible ERISA fiduciary claims against the Metsikases with respect to the Cooperation Fund, the Health Fund, the Pension Fund, the Deferred Income Fund, and the Training Fund, and we grant the Metsikases' Motion to Dismiss Counts IV and V as to those funds.  We further conclude that the Complaint sufficiently alleges that the unremitted employee wage deductions owed to the Vacation Fund and the unpaid contributions owed to the National Fund were plan assets and that the Metsikases exercised authority or control over those assets.  Accordingly, we conclude that Plaintiffs have stated plausible ERISA fiduciary claims against the Metsikases with respect to the Vacation Fund and the National Fund, and we deny the Metsikases' Motion to Dismiss Counts IV and V as to those funds.

An appropriate order follows.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.